UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| United States *ex rel.* Elsdon, | § | |
|     Plaintiff, | § | |
| | § | |
| vs. | § | No. 4:18-cv-01766 |
| | § | |
| U.S. Physical Therapy, Inc., et al., | § | |
|     Defendants. | § | |

**REPLY IN SUPPORT OF MOTION TO DISMISS AMENDED COMPLAINT AND SUPPORTING MEMORANDUM OF LAW BY U.S. PHYSICAL THERAPY, INC. AND <u>THE HALE HAND CENTER, LIMITED PARTNERSHIP</u>**

Relator's Response in Opposition to the Motion to Dismiss [DE 23] ("Response")[1] cannot overcome the basic problem that she did not and cannot plead an essential element of an actionable False Claim Act (FCA) claim—that false claims were submitted for reimbursement to federal payors.[2] She fails to satisfy Rules 8(a) and 9(b)'s plausibility and particularity pleading requirements and does not state a claim under Rule 12(b)(6) for relief under the FCA. Her selective attacks on applicable legal standards and use of rhetorical devices fail to cure the many defects in her claims, which compels her Complaint [DE 1] to be dismissed with prejudice.

### A. Relator Lacks Direct Knowledge about USPT and Clinics other than the single Hale Rockledge Location.

Relator argues that she alleged sufficient particularized facts in her Complaint to join USPT and over 500 clinics owned by over 100 different legal entities into this case for an overarching FCA scheme. That simply is inaccurate. She has not met her threshold burden to extrapolate her theory beyond the single Hale Hand Center location in Florida where she worked. As Relator admittedly lacks direct personal knowledge about operations at other clinics and other provider entities, she must rely upon multiple unsupportable inferences. This may explain why she chose not to respond to various arguments set out in the MTD.

### B. The Complaint Fails to Meet Applicable Plausibility and Particularity Standards.

While Defendant can factually rebut Relator's speculative allegations,[3] federal pleading precedent supports finding that the Complaint is fatally flawed. Rule 8(a) requires more than "a sheer possibility that a defendant has acted unlawfully." Two principles enunciated by the Supreme

---

[1] Relator dropped the three other defendants from this case after defendants filed their Motions to Dismiss. [DE 21]. Relator made similar claims against them in the Complaint.
[2] Contrary to her Response, the Motion to Dismiss her First Amended Complaint filed by U.S. Physical Therapy, Inc. ("USPT") and The Hale Hand Center, Limited Partnership ("Hale") (collectively, "Defendants") [DE 16] ("MTD") raises her failure to sufficiently allege any claims were actually submitted. *See* MTD at 13, 16-17.
[3] Defendants' counsel met with Relator's counsel for over three hours before her Response was due to provide additional factual information to demonstrate her misperceptions and outright falsities underlying her claims.

Court guide that analysis. Under *Ashcroft v. Iqbal*, 556 U.S. 662 (2009): **(1)** a court need not accept allegations that are "legal conclusions" or "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements," *id*. at 678 (citation omitted); and **(2)** determining the plausibility of a claim for relief is "context-specific" which requires the court to draw on its own experience and common sense, *id.* at 679 (citation omitted). So when, as here, a complaint's factual content allows for equal or more plausible factual and legally appropriate explanations, a plaintiff's preferred inferences cannot be assumed. *See id*. When its flawed allegations are disregarded, the Complaint's remaining factual allegations do not *plausibly "show" that they give rise to an entitlement to relief*. *Id*. (quoting Fed. R. Civ. P. 8(a)(2)).

Relator's attempts to characterize Hale and USPT as "bad actors" also fail for a lack of evidentiary support. For instance, she attributes sinister motives to compliance training materials attached as Exhibit H to the Complaint, suggesting these were used to further the allegedly fraudulent scheme. But the materials facially demonstrate that USPT advised Hale how to *comply* with CMS' requirements to accurately code and bill for therapists' services. These materials compel a more plausible and accurate interpretation of this evidence,[4] namely that it was important for Hale and USPT to comply with the complex rules and regulations under which they operate.

The Response does not even try to address the challenge to the pervasive implausibility of Relator's allegations until page 15. Then, rather than taking on the equally or more plausible

---

[4] One example of Relator's faulty interpretations to support her theories is pointing to Complaint Exhibit H (a page from a coding training presentation) as evidence of the scheme to improperly bill Medicare by using "assistants." Resp. at 13. To the contrary, that slide instructs therapists to consider delegating care to "other therapists/assistants to allow for the best coding options." She fails to recognize that the term "assistants" in occupational and physical therapy refers to licensed occupational therapy assistants and licensed physical therapy assistants, who are qualified to perform most services to Medicare patients. Incredibly, her own Exhibit J contains numerous training slides that specifically refer to "assistants" as qualified providers for Medicare patients, as distinguished from "aides." Her allegation lacks plausibility. A related example of faulty interpretations is alleging in Complaint paragraph 104 that Defendants misused an unlicensed extender to further the scheme. As she made no allegation (nor could she) that a *federal payor* was billed for any services performed by unlicensed extenders, this is a red herring under the FCA.

2

explanations raised in the MTD for the allegedly wrongful conduct set out in the Complaint, Relator just proclaims that *Defendants had no innocent reasons* for their conduct and fails to distinguish the authorities cited by Defendants to the contrary.[5] As her *opinion* is not evidence, it cannot credibly distinguish the key point made in the MTD, citing the recent *Baylor* decision, that Medicare allows providers to provide services in a way to obtain better reimbursement.

Relator responds that the supposed falsification of patient appointment schedules provides the "indicia of reliability" to sustain her theory of fraud. But her characterization of this evidence fails as it ignores equal or more plausible reasons for the supposedly "falsified" schedules (such as the front desk maintaining a printed schedule each day, with handwritten notations of rescheduled or missed appointments, etc.), which Hale saved (and did not destroy), along with the updated and revised "end-of-day" version of the schedule. While Defendants challenged the plausibility of her theory that altering patient appointment cards (which patients are to take home) somehow furthered the alleged scheme, Relator chose not to address this problem in her Response.

In any event, this situation is markedly different from the case that Relator cites, where the falsified records *themselves* were *submitted to the Government* to obtain reimbursement. *Cf. U.S. ex rel. Chorches v. Am. Med. Response, Inc.*, 865 F.3d 71, 76-77 (2d Cir. 2017). Unlike *Chorches*, here none of the allegedly "falsified" documents are material, as she made no claim that they were submitted to, or relied upon by, the Government. Relator instead offers a rhetorical device to mask these logical problems, stating "alas, there are simply no reasonable, plausible, rational explanations for the many ruses that Defendants employed. If the Defendants had, in fact, actually avoided group treatment of patients, then why would they need to create false records?" Her *assumption* that the records were false and material is not supported and should be disregarded.

---

[5] *U.S. ex rel. Baylor v. Scott & White Health*, 2019 WL 3713756 (W.D. Tex. Aug. 4, 2019), and *U.S. ex rel. Bennet v. Medtronic, Inc.*, 747 F. Supp. 2d 745 (S.D. Tex. 2010).

### C. The Conflation of Group Therapy Billing as Indicative of Fraud in All Claims Typifies Relator's Unjustified Conjecture

To be clear, if a clinic does not bill a group therapy code, that does not mean that it billed improperly; it is unreasonable to try to equate or infer that not using group therapy codes resulted in false claims being submitted. Although Relator cherry-picked samples of the purported scheme from three days in two years at the Hale Hand Center clinic in Rockledge, her examples do not support her theory; instead they *show group therapy codes were in fact used for some of the services provided to patients on those days*.

This clear flaw explains the Response's new emphasis about "Defendants" not billing under the group therapy code *before* February 2016. Even assuming, *arguendo*, that the Hale Rockledge clinic did not bill under a group code before that date, such "evidence" does not demonstrate a fraudulent scheme *or* that false claims were submitted for services provided. As the MTD explains, Hale had no legal requirement to *perform or bill* for services provided in a group setting when it provided a *higher level of care* for patients.[6] As long as the minutes counted toward a unit of timed, one-on-one codes were dedicated to the treatment of a single patient, it would be proper to not bill the group code for that patient visit, regardless of how many patients were physically in the clinic. Relator's allegations also do not account for the fact, much less preclude, that Hale's therapists understood how to count timed, one-on-one minutes when billing units for proper treatment codes.[7] She also refuses to even consider that Hale may have *underbilled* by not also seeking reimbursement for a group code unit, in addition to one-on-one codes. Instead, she *concludes*, without factual evidence, that Hale necessarily committed fraud since it did not introduce the group therapy code until February 2016. Her worst-case-scenario should not be

---

[6] *See Baylor*, 2019 WL 3713756, at *4; *Bennet*, 747 F. Supp. 2d at 783.
[7] Despite the Response's assertion to the contrary, the Complaint does not account for the lawful practice of intermittent billing. *Cf.* Resp. at 5. Neither the words "intermittent billing" nor the idea of it appear in the Complaint.

4

accepted. It simply is not the *only* reasonable inference to be drawn from what *she believes happened* at Hale's Rockledge clinic; and, given her admitted lack of personal knowledge about its billing practices, her conjecture amounts to rank speculation. Simply repeating her conclusions and opinions throughout the Response does not make them more plausible or true. As she cannot carry her burden for the only entity where she regularly worked, Relator cannot make out a plausible case against the *other clinics* for which she has no direct knowledge—even with *new* allegations about USPT's control and the use of group codes across clinics. *See* Resp. at 11 and nn.1, 4. Her maneuver is patently improper since, in ruling on a motion to dismiss, a court cannot consider new facts alleged in a response that were not in the complaint.[8]

**D. Relator Waives or Abandons her Claims on which she fails to Respond.**

Relator fails to address several essential points made in the MTD, which effectively concedes her Complaint is fatally defective,[9] including:

- The Complaint's extensive reliance on impermissible group, conclusory, and speculative allegations, which violates Rule 9(b)'s particularity standards;
- Defendants' rebuttal of her false speculation that USPT conducts all clinics' billing. (Her silence wrecks her theory about USPT's control of the billing);
- Her admission to lacking personal knowledge of submitted claims;
- Her failure to allege that the exhibits to the Complaint are records that federal payors rely upon to process claims.[10]

For the foregoing reasons, Defendants respectfully request that their Motion to Dismiss be granted and that Relator's Complaint be dismissed with prejudice.

---

[8] *E.g.*, *Leal v. McHugh*, 731 F.3d 405, 407 n.2 (5th Cir. 2013); *Coach, Inc. v. Angela's Boutique*, No. H-10-1108, 2011 WL 2634776, at *2 (S.D. Tex. July 5, 2011) ("Allegations . . . in a response to a motion to dismiss are not appropriately considered in a Rule 12(b)(6) motion, which evaluates the sufficiency of the complaint itself and does not consider allegations not contained in the pleadings.").
[9] *See Arias v. Wells Fargo Bank, N.A.*, No. 3:18-CV-00418-L, 2019 WL 2770160, at *2 (N.D. Tex. July 2, 2019) (a claim is deemed abandoned when a plaintiff fails to defend the claim in response to a motion to dismiss ) (citing *Black v. Panola Sch. Dist.*, 461 F.3d 584, 588 n.1 (5th Cir. 2006)) (plaintiff abandoned her claim when she failed to defend the claim in response to a motion to dismiss). !
[10] *U.S. ex rel. Grubbs v. Kanneganti*; 565 F.3d 180, 190 (5th Cir. 2009) (in absence of actual false claims, requiring particular details of a scheme to submit false claims paired with *reliable indicia* that lead to a strong inference that claims were actually submitted). *Cf. Chorches*, 865 F.3d at 76-77.

5

Respectfully submitted,

BAKER, DONELSON, BEARMAN, CALDWELL & BERKOWITZ, P.C.

/s/ *Michael E. Clark*
Michael E. Clark
Fed. Id. No. 1785
Texas Bar No. 04293200
1301 McKinney St., Suite 3700
Houston, Texas 77010
mclark@bakerdonelson.com
Telephone: (713) 286-7169

**ATTORNEY-IN-CHARGE FOR DEFENDANTS**

**CERTIFICATE OF SERVICE**

On December 9, 2019, I electronically submitted the foregoing document with the clerk of court for the United States District Court for the Southern District of Texas, using the electronic case filing system of the court. I hereby certify that I have served all counsel and/or pro se parties of record electronically or by another manner authorized by Fed. R. Civ. P. 5(b)(2).

/s/ *Michael E. Clark*
MICHAEL E. CLARK